**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ONEIL ALLEN, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| BEST FOODS BAKING CO., et al. | : | NO. 02-CV-3663 |
| | : | |
| Defendants. | : | |

<u>**MEMORANDUM**</u>

**Baylson, J.**                                                                 **April 23, 2003**

Oneil Allen ("Plaintiff") brought this action against Best Foods Baking Co. and Nicholas DeVirgiliis ("Defendants") seeking damages and other relief arising out of Defendants' alleged employment discrimination based on race and disability.  Plaintiff seeks recovery in Count I for race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Pennsylvania Human Relations Act, 43 PA. STAT. ANN. § 951 *et seq.* ("PHRA"); Count II for violations of Titles I and II of the American with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"), the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* ("Rehabilitation Act"), and the PHRA; and Count III for intentional infliction of emotional distress.

I.      **Factual and Procedural Background**

Prior to 1997, Plaintiff was diagnosed with multiple sclerosis.  (Compl. ¶ 16.)  In 1997, Defendant Best Foods hired Plaintiff to work as a Route Sales Representative.  Id. ¶ 20.  Plaintiff alleges that although Defendant Best Foods' published job description states that a Route Sales Representative must be able to drive frequently four to six hours a day, Plaintiff's route involved

driving in excess of four to six hours a day.  Id. ¶¶ 21-22.  Plaintiff further alleges that although

he was, and is still, able to drive four to six hours a day and although he was able to perform all

of the other duties required by the position, he was not able to drive in excess of six hours a day

because of his multiple sclerosis.  Id. ¶¶ 23-25.

Plaintiff admits that he caused a number of motor vehicle accidents while driving his

company vehicle due to his multiple sclerosis symptoms and medications.  Id. ¶ 26.  Plaintiff

claims that he and his doctor informed Defendants of his disability and symptoms.  Id. ¶ 27.

In October 1999, due to his disability and fear of causing additional accidents, Plaintiff

alleges that he bid on and was awarded a non-driving, Rack Loader position with Defendant Best

Foods, the duties of which he could have easily perform.  Id. ¶¶ 28, 30.  Plaintiff further alleges

that, in the same month, Defendants withdrew the Rack Loader position from Plaintiff and gave

it to a Caucasian employee with less seniority.  Id. ¶ 29.

On October 31, 1999[1], Plaintiff began his vacation, and when he returned on November 8,

1999, Defendants placed him on short-term disability due to his multiple sclerosis.  Id. ¶¶ 31-32.

On or about November 15, 1999[2], Defendant DeVirgiliis sent a letter to Plaintiff requesting

suggestions as to how Defendant Best Foods could reasonably accommodate him.  Id. ¶ 33.

Plaintiff responded by requesting that Defendant Best Foods provide him with a "jumper", which

is a Route Sales Representative who is not assigned a specific route, to do some of the driving for

---

[1] Although Plaintiff states in his Complaint that he began his vacation on October 31, 2000, the Court believes Plaintiff meant October 31, 1999 based upon other allegations in the Complaint.

[2] Although Plaintiff states in his Complaint that Defendant DeVirgiliis sent a letter on or about November 15, 2000, the Court believes Plaintiff meant November 15, 1999 based upon other allegations in the Complaint.

Plaintiff.  Id. ¶ 35.  Plaintiff claims that on numerous occasions Defendants have provided

jumpers to assist disabled Caucasian Route Sales Representatives by driving their company

vehicles, and that he himself at one time assisted a Caucasian Route Sales Representative who

had a medical problem.  Id. ¶¶ 36-37.  Plaintiff alleges that, by letter dated January 7, 2000,

Defendants refused to provide Plaintiff with a jumper as a reasonable accommodation for his

disability, even though it would not have been an undue hardship.  Id. ¶¶ 38-39.

Plaintiff claims that Defendants have granted, on numerous occasions, disabled

Caucasian Route Representatives non-driving jobs, but have never allowed similarly situated

non-Caucasian drivers with disabilities the opportunity to work non-driving jobs as an

accommodation for a disability.  Id. ¶¶ 40-41.  Plaintiff further claims that Defendants refused to

provide him with the Rack Loader position he bid on and won based on this practice.  Id. ¶ 42.

Plaintiff also alleges that since he has been on short-term disability, Defendants have

consistently refused to inform or allow him to apply for any other driving positions.[3]  Id. ¶ 43.

Plaintiff's short-term disability expired on May 18, 2000 and he has not received any

compensation or benefits from any source since then.  Id. ¶ 46.

Defendants allegedly informed Plaintiff that he could not return to work unless he was

able to perform all of the duties of a Route Sales Representative without restriction.  Id. ¶ 45.

Finally, Plaintiff alleges that, prior to 1997, Defendants have systematically discriminated against

minorities and persons with disabilities and Plaintiff has been a victim of steadily continuing

_____

[3] It is not clear from Plaintiff's Complaint when he went on short-term disability.  In
paragraph 32, Plaintiff alleges that he was placed on short-term disability when he returned from
his vacation on November 8, 1999.  However, in paragraph 44, Plaintiff alleges that he went on
short-term disability on December 18, 1999.

racial and disability discrimination since 1997.  Id. ¶¶ 47-48.

Plaintiff filed his Complaint in the instant action on June 7, 2002.  Presently before the Court is Defendants' Motion to Dismiss, which was filed on November 15, 2002.  For the reasons set forth below, the Court will grant Defendants' Motion, but will grant Plaintiff leave to file an Amended Complaint as more fully detailed below.

## II.    Legal Standard

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments.  Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1251, 1261 (3d Cir. 1994).  The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff.  Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).  A Rule 12(b)(6) motion will be granted only when it is certain that no relief could be granted under any set of facts that could be proved by the plaintiff.  Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988).

## III.   Discussion

In their Motion to Dismiss, Defendants argue: (1) Plaintiff's claims under Title VII, Title I of the ADA, the Rehabilitation Act and the PHRA should be dismissed because Plaintiff did not file a timely charge with the Equal Employment Opportunity Commission ("EEOC") or the Pennsylvania Human Relations Commission ("PHRC"); (2) Plaintiff's claims under Title II of the ADA should be dismissed because neither Defendant is a public entity; (3) Plaintiff's discrimination claims against Defendant DeVirgiliis should be dismissed because Defendant DeVirgiliis is not an "employer" within the meaning of Title VII, the ADA, the Rehabilitation

Act, or the PHRA; and (4) Plaintiff's claim for intentional infliction of emotional distress fails to

state a claim upon which relief can be granted because the claim is barred by the Pennsylvania

Worker's Compensation Act ("PWCA") and Defendants' actions do not constitute the kind of

extreme conduct required to state such a claim.  (Mem. Supp. Mot. Dismiss at 3-11.)

Plaintiff argues: (1) Plaintiff did timely file a charge with the EEOC; (2) Plaintiff has a

viable claim against Defendant DeVirgiliis under the PHRA, which attaches liability to "persons"

and "employees" who aid and abet discrimination; (3) Plaintiff's intentional infliction of

emotional distress claim is not barred by the PWCA because it falls within the personal animus

exception; and (4) Defendants' actions constitute the requisite conduct required to state an

intentional infliction of emotional distress claim.  (Mem. Opp'n Mot. Dismiss at 5-8.)

## A.    Plaintiff's Discrimination Charge

### 1.    Timeliness of the EEOC Charge

In order to bring suit under Title VII, the ADA, and the Rehabilitation Act, a plaintiff

must have exhausted his/her administrative remedies by filing a timely charge of discrimination

with the EEOC.  Peter v. Lincoln Tech. Ins., No. CIV.A.01-5949, 2002 U.S. Dist. LEXIS 17345,

at *10 (E.D. Pa. Aug. 30, 2002); Gharzouzi v. Northwestern Human Servs. of Pennsylvania, 225

F. Supp. 2d 514, 521 (E.D. Pa. 2002); Weber v. Henderson, No. CIV.A.99-2763, 2001 U.S. Dist.

LEXIS 2996, at *7 (E.D. Pa. March 21, 2001) (citing Spence v. Straw, 54 F.3d 196, 201 (3d Cir.

1996)).  For a charge to be timely, a plaintiff must normally file his/her charge of discrimination

with the EEOC within 180 days after the alleged unlawful employment practice occurred.  Peter,

2002 U.S. Dist. LEXIS 17345, at *10; Gharzouzi, 225 F. Supp. 2d at 521.  However, in a

"deferral state" such as Pennsylvania, that is, a state which has a state or local law prohibiting the

practice alleged and establishing or authorizing the state or local authority to grant or seek relief from practices prohibited under Title VII or the ADA, the plaintiff has 300 days, not 180 days, from the date of the alleged unlawful employment practice to file his/her charge of discrimination with the EEOC. Peter, 2002 U.S. Dist. LEXIS 17345, at *10-11 (citing Seredinski v. Clifton Precision Prods. Co., 776 F.2d 56, 61 (3d Cir. 1985)); Gharzouzi, 225 F. Supp. 2d at 521 (citing same). The extension of the filing time to 300 days holds regardless of whether the plaintiff ever files a charge with the state agency. Peter, 2002 U.S. Dist. LEXIS 17345, at *11 (citing Colgan v. Fisher Scientific Co., 935 F.2d 1407, 1414-15 (3d Cir. 1991), cert. denied, 502 U.S. 941, 112 S. Ct. 379, 116 L. Ed. 2d 330 (1991)); Gharzouzi, 225 F. Supp. 2d at 521 (citing same). Thus, Plaintiff had 300 days from the date of the alleged unlawful practice to file his EEOC claim.

### 2.  Timeliness of the PHRC Charge

Although a plaintiff has 300 days to file a charge with the EEOC, a plaintiff must file an administrative complaint with the PHRC within 180 days of the date of the alleged act of discrimination in order to preserve state claims under the PHRA. 43 PA. CONS. STAT. § 959(h); Gharzouzi, 225 F. Supp. 2d at 526 n.8. Therefore, if a plaintiff files an administrative complaint with the EEOC, which is cross-filed with the PHRC, more than 180 days from the date of the alleged act of discrimination, the plaintiff's state claims under the PHRA will be barred absent circumstances justifying equitable tolling. Gharzouzi, 225 F. Supp. 2d at 526 (citing Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997), cert. denied, 522 U.S. 914, 118 S. Ct. 299, 139 L. Ed. 2d 230 (1997)). In such a case, the court is deprived of jurisdiction over the PHRA claim. Id. (citing Parsons v. Philadelphia Office of Drug and Alcohol Abuse, 833 F. Supp. 1108, 1112 (E.D. Pa. 1993)). This filing requirement is strictly interpreted and enforced. Id. (citing

Woodson, 109 F.3d at 925).

Defendants argue that Plaintiff did not timely file his charge with the EEOC because Plaintiff did not file his charge with the EEOC until September 18, 2001, which is more that 300 days after the most recent "unlawful employment practice" that Plaintiff complained of, which was Defendant Best Foods' January 7, 2000 denial of Plaintiff's request for a jumper as a reasonable accommodation. (Mem. Supp. Mot. Dismiss at 5-6.) Plaintiff argues that he did timely file an EEOC charge because Defendants' last unlawful actions or inaction have been the continuing denial of his January 7, 2000 request for a reasonable accommodation and continual refusal to respond to his bids, which are part of the continuing violations of the ADA and Title VII. (Mem. Opp'n Mot. Dismiss at 5.)

### 3.    Continuing Violation Theory

Under the "continuing violation theory," a plaintiff "may pursue a Title VII claim for discriminatory conduct that began prior to the filing period if he can demonstrate that the act is part of an ongoing practice or pattern of discrimination of the defendant." Gharzouzi, 225 F. Supp. 2d at 525 (quoting West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995)).

A plaintiff must meet two requirements in order to establish that a claim falls within the continuing violations theory. "First, he must demonstrate that at least one act occurred within the filing period: The crucial question is whether any present violation exists." Id. (internal quotations and citations omitted).

"Next, the plaintiff must establish that the harassment is more than the occurrence of isolated or sporadic acts of intentional discrimination. The relevant distinction is between the occurrence of isolated, intermittent acts of discrimination and an on-going pattern." Id. (internal

quotations and citations omitted). In determining whether the plaintiff has met the second

requirement, the Court must consider the following factors: (1) the subject matter, i.e., whether

the violations constitute the same type of discrimination; (2) the frequency of the alleged

discriminatory acts; and (3) the degree of permanence, i.e., whether the nature of any of the

violations should have triggered the employee's awareness of the need to assert his rights and

whether the consequences of the act, such as being fire or being denied a promotion, would

continue even in the absence of a continuing intent to discriminate. Blum v. Council Rock Sch.

Dist., No. CIV.A.02-769, 2002 U.S. Dist. LEXIS 3022, at *12 (E.D. Pa. Feb. 14, 2003) (citations

omitted).

"Once the plaintiff has alleged sufficient facts to support use of the continuing violation

theory, . . . the 300-day filing period becomes irrelevant – as long as at least one violation has

occurred within that 300 days. Plaintiff may then offer evidence of, and recover for, the entire

continuing violation." Gharzouzi, 225 F. Supp. 2d at 525-26 (internal quotations and citations

omitted).

> a.    **First Prong - One Act of Discrimination Occurred During the**
**Filing Period**

In his Complaint, Plaintiff alleges that "ever since [December 18, 1999], defendants have

consistently refused to inform or allow him to apply for any other non-driving positions within

the company." Plaintiff further alleges that, as of June 7, 2002, he continues to be "a victim of

steadily continuing racial and disability discrimination since 1997." (Compl. ¶ 48.) The Court

cannot determine whether Plaintiff has demonstrated that at least one act of discrimination

occurred within the 180 or 300 days prior to the filing of Plaintiff's EEOC charge on September

18, 2001 because Plaintiff does not allege any specific acts of continuing racial and disability discrimination. The Court will, therefore, grant Plaintiff leave to file an Amended Complaint, if he can, under the strictures of FED. R. CIV. P. 11(b), make specific allegations about the type and dates of continuing racial and disability discrimination suffered and who committed such discriminatory acts so that the Court may determine whether Plaintiff has sufficiently alleged that at least one act of discrimination occurred within the 180 or 300 days prior to the filing of Plaintiff's EEOC charge on September 18, 2001.

      **b.      Second Prong - Harassment is More than the Occurrence of Isolated or Sporadic Acts of Intentional Discrimination**

With respect to the first factor listed above (i.e., subject matter of the alleged discriminatory acts), Plaintiff alleges that Defendant Best Foods' January 7, 2000 denial of Plaintiff's request for a jumper as a reasonable accommodation was an act of discrimination based on race and disability and that he continues to be a victim of continuing racial and disability discrimination. Plaintiff, therefore, has sufficiently pleaded the same type of discrimination.

With respect to the second factor listed above (i.e., frequency of the alleged discriminatory acts), Plaintiff alleges that he continues to be a victim of continuing racial and disability discrimination. The Court, however, cannot determine the nature or frequency of the alleged discriminatory acts because, as stated above, Plaintiff does not allege any specific acts of continuing racial and disability discrimination. The Court will, therefore, grant Plaintiff leave to file an Amended Complaint, if he can, under the strictures of FED. R. CIV. P. 11(b), make specific allegations about the type and dates of continuing racial and disability discrimination suffered

and who committed such discriminatory acts so that the Court may determine whether Plaintiff

has sufficiently alleged the frequency of the alleged discriminatory acts.

With respect to the third factor (i.e., consistency of the alleged discriminatory acts), the

Court cannot determine whether Plaintiff has sufficiently pleaded that the continuous acts of

discrimination were consistent, and not isolated nor sporadic because, as stated above, Plaintiff

does not allege any specific acts of continuing racial and disability discrimination.  The Court

will, therefore, grant Plaintiff leave to file an Amended Complaint, if he can, under the strictures

of FED. R. CIV. P. 11(b), make specific allegations about the type and dates of continuing racial

and disability discrimination suffered and who committed such discriminatory acts so that the

Court may determine whether Plaintiff has sufficiently alleged that the continuous acts of

discriminations were consistent.

Thus, although the Court concludes Plaintiff has not, at the present time, sufficiently

pleaded the continuing violation theory, it will grant Defendants' Motion to Dismiss on the

grounds that Plaintiff's EEOC charge was not timely filed without prejudice, but will grant

Plaintiff leave to file an Amended Complaint that complies with the requirements listed above.

**B.    Plaintiff's Claims under the ADA**

Defendants argue that Plaintiff's claims under Title II of the ADA should be dismissed

because neither of the Defendants is a public entity.[4]  Title II of the ADA provides that "no

qualified individual with a disability shall, by reason of such disability, be excluded from

participation in or be denied the benefits of the services, programs or activities of a public entity,

---

[4] In his response, Plaintiff states that he has no argument in response to Defendants'
argument that Plaintiff's claims under Title II of the ADA should be dismissed.  (Mem. Opp'n
Mot. Dismiss at 7 n.1.)

or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title II, however, only applies to a "public entity", which is defined as "any state or local government . . . any department, agency, special purpose district, or other instrumentality of a State or States or local government . . . ." Id. § 12131.

Because neither of the Defendants fall within the definition of public entity, Plaintiff cannot maintain a claim against Defendants under Title II of the ADA. In addition, the Third Circuit has recognized that individuals are not liable under Titles I and II of the ADA. Emerson v. Thiel College, 296 F.3d 184, 189 (3d Cir. 2002). Thus, Defendant DeVirgiliis cannot be liable under Title I of the ADA. The Court, therefore, will grant Defendants' Motion to Dismiss Plaintiff's claims against Defendant Best Foods under Title II of the ADA and Plaintiff claims against Defendant DeVirgiliis under Titles I and II of the ADA.

**C.    Plaintiff's Claims against Defendant DeVirgiliis**

Defendants argue that Plaintiff discrimination claims against Defendant DeVirgiliis should be dismissed because Defendant DeVirgiliis is not an "employer" under Title VII, the ADA, the Rehabilitation Act, or the PHRA.[5]

**1.    Title VII**

Title VII prohibits unlawful employment practices by employers. 42 U.S.C. § 2000e-2(a). The Third Circuit has held that individual employees are not liable under Title VII. Emerson, 296 F.3d at 190 (citing Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061,

---

[5] In his response, Plaintiff states that he has no argument in response to Defendants' argument that Defendant DeVirgiliis is not an "employer" within the meaning of Title VII, the ADA, or the Rehabilitation Act. (Mem. Opp'n Mot. Dismiss at 7 n.1.) With respect to Plaintiff's ADA claim against Defendant DeVirgiliis, the Court has already held that Defendant DeVirgiliis is not liable under Titles I and II of the ADA.

1077-78 (3d Cir. 1996)).  The Court, therefore, finds that Plaintiff has failed to state a claim

against Defendant DeVirgiliis under Title VII and will grant Defendants' Motion to Dismiss

Plaintiff's Title VII claim against Defendant DeVirgiliis.

### 2.    Rehabilitation Act

Section 504 of the Rehabilitation Act provides, in relevant part:

> No otherwise qualified individual with a disability . . . shall, solely by reason of
> her or his disability, be  excluded from the participation in, be denied the benefits
> of, or be subjected to discrimination under any program or activity receiving
> Federal financial assistance . . . .

29 U.S.C. § 794(a) (2003).

In Emerson, the Third Circuit held that "[b]ecause the individual defendants do not

receive federal aid, [the plaintiff] does not state a claim against them under the Rehabilitation

Act."  296 F.3d at 190.  Similarly, in this case, because Plaintiff does not allege that Defendant

DeVirgiliis receives federal aid, the Court finds that Plaintiff has failed to state a claim against

Defendant DeVirgiliis under the Rehabilitation Act.  The Court, therefore, will grant Defendants'

Motion to Dismiss Plaintiff's Rehabilitation Act claim against Defendant DeVirgiliis.

### 3.    PHRA

The discriminatory practices that are unlawful under the PHRA are the same

discriminatory practices that are unlawful under Title VII.  Dici v. Pennsylvania, 91 F.3d 542,

552 (3d Cir. 1996).  Unlike Title VII, however, individuals may in some instances be proper

defendants.  Gharzouzi, 225 F. Supp. 2d at 529 n.11.  Individual employees can be held liable

under § 5(e) of the PHRA if they "aid, abet, incite, compel or coerce the doing of any act

declared by this section to be an unlawful discriminatory practice."  Id.; 43 PA. STAT. ANN. §

955(e). Individual employees, however, cannot be liable under § 5(a) of the PHRA, the PHRA's

employment discrimination provision. Gharzouzi, 225 F. Supp. 2d at 529 n.11.

Although Plaintiff alleges violations of § 5(a) of the PHRA, Plaintiff fails to make any

allegations that Defendant DeVirgiliis aided, abetted, incited, compelled or coerced the doing of

any unlawful discriminatory practice. The Court, therefore, will grant Defendants' Motion to

Dismiss Plaintiff's PHRA claim against Defendant DeVirgiliis, but will grant Plaintiff leave to

file an Amended Complaint, if he can, under the strictures of FED. R. CIV. P. 11(b), make specific

allegations about how Defendant DeVirgiliis aided, abetted, incited, compelled or coerced the

doing of any unlawful discriminatory practice.

### D.    Plaintiff's Intentional Infliction of Emotional Distress Claim

The PWCA provides that "[t]he liability of an employer under this act shall be exclusive

and in place of any and all other liability to such employees . . . in any action at law or otherwise

on account of any injury or death as defined in [77 PA. STAT. ANN. § 411] or occupational disease

as defined in [77 PA. STAT. ANN. § 27.1]." 77 PA. STAT. ANN. § 481(a). The PWCA, however,

carves out an exception, often referred to as the "personal animus" or "third-party attack"

exception, for employee injuries caused by the intentional conduct of third parties for reasons

unrelated to an employee's employment. DeWyer v. Temple Univ., No. CIV.A.00-1665, 2001

U.S. Dist. LEXIS 1141, at *12-13 (E.D. Pa. Feb. 6, 2001). The personal animus exception in the

PWCA states:

> the term "injury arising in the course of his employment". . . shall not include an
> injury caused by the act of a third person intended to injure the employee because
> of reasons personal to him, and not directed against him as an employee or
> because of his employment.

-13-

77 Pa. Stat. Ann. § 411(1).

There are four elements to the personal animus exception: (1) claimant's injury must have resulted from an intentional act; (2) the act cannot be one that would normally be expected in the workplace; (3) the act must have been committed by a co-worker or someone other than the employer; and (4) the person who committed the intentional act must have been motivated by personal animus.  Hettler v. Zany Brainy, Inc., No. CIV.A.99-3879, 2000 U.S. Dist. LEXIS 14537, at *13 (E.D. Pa. Sept. 27, 2000) (citations omitted).

Although Plaintiff's allegation that Defendant DeVirgiliis, a co-worker, committed discriminatory acts satisfies the third element of the personal animus exception, there are no allegations to satisfy the remaining elements.  There are no allegations that Plaintiff's injury resulted from an intentional act, that the act is not one that would normally be expected in the workplace, or that Defendant DeVirgiliis was motivated by personal animus.  Therefore, the Court will grant Defendants' Motion to Dismiss Plaintiff's intentional infliction of emotional distress claim.  The Court, however, will grant Plaintiff leave to file an Amended Complaint, if he can, under the strictures of Fed. R. Civ. P. 11(b), make allegations that Plaintiff's claim falls within the personal animus exception.

IV.    **Conclusion**

For the reasons set forth above, the Court will grant in part and deny in part Defendants' Motion to Dismiss.  The Court will grant Defendants' Motion to Dismiss:

1.    All of Plaintiff's claims for failure to timely file a charge with the EEOC or PHRC without prejudice, but will grant Plaintiff leave to file an Amended Complaint to establish the applicability of the continuing violation theory;

-14-

2.      Plaintiff's claim against Defendant Best Foods under Title II of the ADA;

3.      Plaintiff's claims against Defendant DeVirgiliis under Titles I and II of the ADA, Title VII, and the Rehabilitation Act;

4.      Plaintiff's claims against Defendant DeVirgiliis under the PHRA without prejudice, but will grant Plaintiff leave to file an Amended Complaint to establish an aiding and abetting claim under § 5(e) of the PHRA; and

5.      Plaintiff's intentional infliction of emotional distress claim against both Defendants without prejudice, but will grant Plaintiff leave to file an Amended Complaint to establish the applicability of the personal animus exception.

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ONEIL ALLEN, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| BEST FOODS BAKING CO., et al. | : | NO. 02-CV-3663 |
| | : | |
| Defendants. | : | |

## <u>ORDER</u>

AND NOW, this 23rd day of April, 2003, upon consideration of Defendants' Motion to Dismiss (Docket No. 3), and Plaintiff's Response thereto (Docket No. 7), it is hereby ORDERED that Defendants' Motion to Dismiss is GRANTED as follows:

1.     Defendants' Motion to Dismiss all of Plaintiff's claims for failure to timely file a charge with the EEOC and/or PHRC is GRANTED WITHOUT PREJUDICE, but Plaintiff is granted leave to file an Amended Complaint to establish the applicability of the continuing violation theory;

2.     Defendants' Motion to Dismiss Plaintiff's claim against Defendant Best Food under Title II of the ADA is GRANTED WITH PREJUDICE;

3.     Defendants' Motion to Dismiss Plaintiff's claims against Defendant DeVirgiliis under Titles I and II of the ADA, Title VII, the Rehabilitation Act is GRANTED WITH PREJUDICE;

4.     Defendants' Motion to Dismiss Plaintiff's claims against Defendant DeVirgiliis under and the PHRA is GRANTED WITHOUT PREJUDICE, but Plaintiff is granted leave to file an Amended Complaint to establish an aiding and abetting claim under § 5(e) of the PHRA;

5.     Defendants' Motion to Dismiss Plaintiff's intentional infliction of emotional

distress claim against both Defendants is GRANTED WITHOUT PREJUDICE, but Plaintiff is granted leave to file an Amended Complaint to establish the applicability of the personal animus exception.

Plaintiff shall file an Amended Complaint within twenty (20) days.

**BY THE COURT:**

_____
**MICHAEL M. BAYLSON, U.S.D.J.**

O:\Orders - Civil\Allen v. Best Foods Baking Co., 02-3663, Order re Motion to Dismiss.wpd